[No. B151461. Second Dist., Div. Seven. May 20, 2002.]

MICHAEL P. HALL, Plaintiff and Appellant, v.
COURT REPORTERS BOARD OF CALIFORNIA, Defendant and
Respondent.

**COUNSEL**

George Baltaxe for Plaintiff and Appellant.

Bill Lockyer, Attorney General, and Linda L. Sun, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**PERLUSS, J.**—Plaintiff and appellant Michael P. Hall appeals from a judgment after the trial court denied his petition for writ of mandate to compel respondent, the Court Reporters Board of California (Board), to vacate its order of discipline imposed against Hall's license. The trial court concluded Hall had engaged in "unprofessional conduct" in the practice of shorthand reporting when, as part of his subcontracting business, he induced other shorthand reporters to perform services on his behalf and then failed to pay them for services rendered. Hall's sole contention on appeal is that the failure to pay his subcontractors for reporting services, without any evidence that such failure adversely affected the duties or services Hall provided to his clients, is unrelated to the practice of shorthand reporting and not within the Board's disciplinary jurisdiction. On the record before us, we agree and reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts are undisputed. Hall has been a certified shorthand reporter for 40 years. In that capacity, he frequently subcontracted with other shorthand reporters to perform shorthand-reporting services on his behalf. In exchange for Hall's promises of payment, the subcontractors would perform reporting services for Hall's clients and provide a complete transcript for Hall to forward to the client. Hall billed the client directly. The subcontractors did not charge Hall's clients directly, relying instead on Hall for payment.

In 1998 the Board filed an accusation against Hall for willful violation of duty, gross negligence and unprofessional conduct (Bus. & Prof. Code,[1] § 8025, subd. (d)[2]) in connection with his failure to pay 18 shorthand reporters a total of $23,875.78 for services performed on his behalf from May 1991 through July 1997. On November 22, 1999 the Board filed a supplemental accusation charging Hall with failure to pay six additional shorthand reporters a total of $5,798.72 from May 1997 through April 1999. Both accusations included charges of willful violation of duty, gross negligence, and unprofessional conduct; neither charged fraud.

Hall stipulated to the allegations of nonpayment but argued that failure to pay subcontractors did not subject his license to discipline. At a hearing

---

[1] All statutory references are to the Business and Professions Code unless otherwise indicated.

[2] Section 8025, subdivision (d) provides, in part, that a court reporting license may be subject to disciplinary action for "[f]raud, dishonesty, corruption, willful violation of duty, gross negligence or incompetence in practice, or unprofessional conduct in the practice of shorthand reporting."

before the administrative law judge (ALJ), Hall explained he was unable to pay the reporters on occasion due to hard economic times and financial difficulties. He admitted that in many cases he did not pay the reporters even though the client had paid him for the services rendered. He explained his shorthand reporters were paid from a common pool of funds and not from the funds collected from a specific client; economic downturns had taken their toll on the pool, leaving little or no money for Hall to compensate his subcontractors.

The Board's expert witness, Lois Ludwig, a practicing court reporter for 30 years and owner of a deposition agency, testified it was standard practice in the industry for certified reporters to enter into oral subcontracts with other shorthand reporters to perform reporting services and to pay those reporters promptly, irrespective of whether the client paid for the services. Ludwig opined that Hall's failure to pay the shorthand reporters for work provided constituted unprofessional conduct.

Hall introduced evidence that in 1991, in a written response to a complaint from a shorthand reporter whom Hall failed to pay, the Board stated: "While the [Board] certainly does not condone its licensees not meeting their financial obligations, the Board also has no legal authority in fee matters." Claiming this letter showed that the Board had admitted it lacked jurisdiction over fee dispute matters, Hall argued the Board was estopped from asserting otherwise in this proceeding.

The ALJ found that Hall's repeated nonpayment of subcontractors involved more than legitimate fee disputes. Rather, finding that Hall had made express or implied promises of payment to his subcontracting shorthand reporters to induce their services on his behalf, and that Hall knew or should have known those representations were false and that he would not pay the reporters for services rendered, the ALJ concluded Hall's actions amounted to unprofessional conduct in the practice of shorthand reporting. The ALJ revoked Hall's certificate, then stayed the revocation and placed Hall's certificate on probation for three years provided that Hall comply with the terms of probation. In addition, the ALJ ordered Hall to make restitution payments to the shorthand reporters identified in the accusations and to pay $12,000 to the Board as compensation for its costs in investigating and enforcing this case.

Hall filed a petition for administrative writ of mandate (Code Civ. Proc., § 1094.5) in the trial court challenging the order of discipline against his

license.[3] The superior court denied the petition and entered judgment in the Board's favor, finding that Hall's deliberate and continuous pattern of failing to pay his subcontractors for shorthand reporting services over an eight-year period was "tantamount to fraud" in the performance of a professional service and thus constituted unprofessional conduct.

Hall filed a timely notice of appeal from the judgment.

CONTENTIONS

Hall does not dispute the trial court's factual findings. Instead, he contends his failure to pay his subcontractors for their shorthand-reporting services, even if determined to be fraudulent, is unrelated to the practice of shorthand reporting and thus does not constitute "unprofessional conduct" in the practice of shorthand reporting as a matter of law.

DISCUSSION

1. *Standard of Review*

■ On appeal from a judgment denying a petition for administrative writ of mandamus, the reviewing court reviews the record as a whole to determine whether the trial court's findings are supported by substantial evidence. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 824 [85 Cal.Rptr.2d 696, 977 P.2d 693].) When the facts are not in dispute and the issue is solely one of statutory interpretation, the Court of Appeal applies its own independent judgment to the legal question and is not bound by the trial court's interpretation. (*Borden v. Division of Medical Quality* (1994) 30 Cal.App.4th 874, 879 [35 Cal.Rptr.2d 905].)

2. *Where Fraudulent Conduct in Connection with Nonpayment to Subcontracting Shorthand Reporters Does Not Affect the Shorthand Reporting Services Provided, the Conduct Is Not Accomplished "In the Practice of Shorthand Reporting" and Does Not Qualify as "Unprofessional Conduct" as Defined in Section 8025*

■ Hall contends nonpayment to subcontractors in connection with shorthand reporting services, even if fraudulent, is not accomplished "in the

---

[3]In addition to the administrative record, Hall included with his petition newly discovered evidence that in December 2000 the Board, in another response to a shorthand reporter complaining about Hall's nonpayment for services rendered, stated the Board had no jurisdiction over fee matters. Hall requested and the trial court agreed to consider the newly discovered evidence under Code of Civil Procedure section 1094.5, subdivision (e) (superior court may admit newly produced evidence that, despite reasonable diligence, could not have been produced at the administrative hearing).

practice of shorthand reporting" as defined in sections 8017 and 8025 and thus does not fall within the Board's jurisdiction. The Board, although conceding that ordinary fee disputes are outside its jurisdiction, nonetheless contends that a pattern and practice of fraudulently inducing shorthand reporting services through false promises of payment constitutes "unprofessional conduct" in the practice of shorthand reporting and subjects the wrongdoer's license to discipline.

Our analysis of the Board's disciplinary purview begins with a review of the governing statutes. (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 578 [110 Cal.Rptr.2d 809, 28 P.3d 860].) ▆ We give the words their plain and ordinary meaning while considering each provision of the statutes in context of the entire statutory scheme, avoiding any interpretation leading to absurd results. (*Ibid.*; *DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 388 [20 Cal.Rptr.2d 523, 853 P.2d 978].)

Section 8025, subdivision (d) permits the Board to discipline a licensed shorthand reporter for "[f]raud, dishonesty, corruption, willful violation of duty, gross negligence or incompetence in practice, or unprofessional conduct *in the practice of shorthand reporting.* [¶] 'Unprofessional conduct' includes, *but is not limited to,* acts contrary to professional standards concerning confidentiality; impartiality, filing and retention of notes; notifications, availability, delivery, execution and certification of transcripts; and any provision of law substantially related to the duties of a certified shorthand reporter." (§ 8025, subd. (d), italics added.)

▆ Pointing out that unprofessional conduct is defined in the statute "without limitation," the Board urges that the failure to pay subcontractors, although not expressly defined as unprofessional conduct in the statute, nonetheless falls within that broad definition, and that fraud in connection with professional services is necessarily "unprofessional conduct." The question presented, however, is not whether a fraudulent misrepresentation to induce shorthand reporting services constitutes "unprofessional conduct" in the abstract, but whether such unprofessional conduct can be said to occur "in the practice of shorthand reporting," (§ 8025, subd. (d)), thus bringing the objectionable conduct within the Board's jurisdiction.

To determine whether the misconduct occurred "in the practice of shorthand reporting," we examine the plain language of the statute. "The practice of shorthand reporting is defined as the making, by means of written symbols or abbreviations in shorthand or machine shorthand writing, of a verbatim record of any oral court proceeding, deposition, court ordered hearing or arbitration . . . and the accurate transcription thereof." (§ 8017.)

This definition limits "the practice of shorthand reporting" to include those acts relating to shorthand reporting duties, such as preparation and execution of the transcript, and does not include business or accounting practices incident to those duties. The omission is significant. Unlike other areas of the law in which the Legislature has enacted statutes permitting disciplinary action for failure to pay subcontractors[4] or to subject misconduct to discipline even when it occurs outside of the profession,[5] the Legislature has omitted similar requirements in the licensing statutes relating to court reporters. (See *Gray v. Superior Court* (2002) 95 Cal.App.4th 322, 328 [115 Cal.Rptr.2d 477] [Legislature knows how to provide for dismissal in sexual predator cases and its silence in statute is strong indication of legislative intent not to allow dismissal].)

The Board suggests that inducement to perform reporting services with false promises of payment is conduct "in the practice of shorthand reporting" because the client would not have been provided with the shorthand reporting services but for the subcontractors' performance. The same argument can be made with respect to any other subcontractor assisting the licensee in carrying out his or her duties. Nothing in the statutory scheme suggests it was designed to ensure the licensee's compliance with its payment obligations to its employees or subcontractors, whether they are shorthand reporters, accountants, lawyers or other professionals or personnel hired to assist the licensee in carrying out his or her reporting duties to the client.

Our conclusion is consistent with the statute's declared legislative purpose. In enacting the shorthand reporter licensing scheme, the Legislature declared: "This chapter is designed to establish and maintain a standard of competency for those engaged in the practice of shorthand reporting, for the protection of the public, in general, and for the protection of all litigants whose rights to personal freedom and property are affected by the competency of shorthand reporters, in particular." Notably, we are not faced here

---

[4](See, e.g., § 7108.5 ["A prime contractor or subcontractor shall pay to any subcontractor, not later than 10 days of receipt of each progress payment, unless otherwise agreed to in writing, the respective amounts allowed the contractor on account of the work performed by the subcontractors, to the extent of each subcontractor's interest therein. In the event that there is a good faith dispute over all or any portion of the amount due on a progress payment from the prime contractor or subcontractor to a subcontractor, then the prime contractor or subcontractor may withhold no more than 150 percent of the disputed amount. [¶] Any violation of this section shall constitute a cause for disciplinary action and shall subject the licensee to a penalty, payable to the subcontractor, of 2 percent of the amount due per month for every month that payment is not made. In any action for the collection of funds wrongfully withheld, the prevailing party shall be entitled to his or her attorney's fees and costs."].)

[5](See, e.g., § 6106 [The "commission of any act [by a lawyer] involving moral turpitude, dishonesty or corruption, *whether the act is committed in the course of his relations as an attorney or otherwise* . . . constitutes a cause for disbarment or suspension."], italics added.)

with evidence that failure to pay subcontractors for reporting services compromised the services Hall provided to his clients. Although it is possible to conceive of circumstances where the failure to pay subcontractors for shorthand reporting services would undermine the declared legislative purpose—for example, nonpayment may result in a significant delay of services or compromise the integrity of the product delivered—the record in this case is devoid of any such evidence. Therefore, on the limited and undisputed factual record before us, we hold that the failure to pay subcontractors, even if the subcontractors' services were fraudulently induced, is not "unprofessional conduct *in the practice of shorthand reporting*" as defined in sections 8015 and 8025, although such conduct may be subject to other remedies.

Significantly, neither the accusation nor the supplemental accusation charged Hall with fraud. We are, therefore, not faced with the question whether fraudulent conduct *relating* to shorthand reporting, as opposed to fraudulent conduct "in the practice of shorthand reporting," would be sufficient to subject Hall's license to discipline. Specifically, as we explained, to constitute unprofessional conduct, the fraudulent conduct must occur "in the practice of shorthand reporting." (§ 8025, subd. (d).) However, section 8025, subdivision (d) also mandates discipline for "[f]raud, dishonesty, corruption, willful violation of duty, gross negligence or incompetence in practice . . . ." It would appear "in the practice of shorthand reporting" is a limitation applying only to "unprofessional conduct," and that "fraud" as a ground for discipline in section 8025, subdivision (d) is subject only to the more general constitutional limitation requiring licensing statutes to be interpreted to include a required nexus between the licensee's conduct and practice (see *Marek v. Board of Podiatric Medicine* (1993) 16 Cal.App.4th 1089, 1096 [20 Cal.Rptr.2d 474] [to pass constitutional muster, statute allowing for suspension of license must be read to include a requirement that the misconduct relate to licensee's fitness to practice profession]).[6] Nonetheless, because the Board never alleged fraud as a basis for discipline, we need not resolve this question of statutory interpretation or the corollary question whether the

---

[6]The regulations informing the statutory scheme suggest that, where not otherwise indicated, the misconduct must "substantially relate" to one's fitness to practice shorthand reporting. (See Cal. Code Regs., tit. 16, § 2470 ["For the purpose of denial, suspension, or revocation of the certificate of a shorthand reporter pursuant to Section 475 of the Code [of Business and Professions], a crime or act shall be considered substantially related to the qualifications, functions, and duties of a shorthand reporter if to a substantial degree it evidences present or potential unfitness of a shorthand reporter to perform the functions authorized by this certification in a manner consistent with the public health, safety, or welfare."].)

fraudulent inducement of shorthand-reporting services from his subcontractors, if proved, would relate to Hall's fitness to practice shorthand reporting sufficiently to subject his license to discipline.[7]

## DISPOSITION

The judgment of the superior court is reversed. The cause is remanded to the superior court with instructions to grant the petition for writ of administrative mandamus, directing the Board to set aside its order of discipline, and to take any such further action as is proper in accordance with this decision. Hall is entitled to recover costs on appeal.

Lillie, P. J., and Woods, J., concurred.

---

[7] In fact, the ALJ directly observed that, because neither fraud nor dishonesty was alleged in the accusation, he was not called upon to decide the issue. Instead, the ALJ found, and the trial court agreed, that Hall's conduct was "tantamount to fraud."