[No. E031802. Fourth Dist., Div. Two. July 15, 2003.]

RALPH'S GROCERY COMPANY, Plaintiff and Appellant, v. DEPARTMENT OF FOOD AND AGRICULTURE, Defendant and Respondent; SEALER OF WEIGHTS AND MEASURES OF THE COUNTY OF RIVERSIDE, Real Party in Interest and Respondent.

696

COUNSEL

Rutan & Tucker and Hans Van Ligten for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Mary E. Hackenbracht, Assistant Attorney General, Carol A. Squire and Deborah M. Fletcher, Deputy Attorneys General, for Defendant and Respondent.

William C. Katzenstein, County Counsel, and Neal R. Kipnis, Deputy County Counsel, for Real Party in Interest and Respondent.

OPINION

**McKINSTER, Acting P. J.**—Ralph's Grocery Company (Ralph's) appeals from a judgment denying mandamus relief from a decision by the Sealer of Weights and Measures of the County of Riverside that imposed multiple administrative fines on Ralph's for selling inaccurately weighed seafood in violation of Business and Professions Code sections 12023 and 12024.[1] Ralph's argues that (1) the sealer unlawfully imposed separate fines for each offending package of seafood under section 12023 rather than one fine for the entire lot, and (2) multiple fines for the single act or omission of mislabeling seafood violated Penal Code section 654. We generally disagree with Ralph's, concluding that (1) section 12023 authorizes separate fines for each offending package of seafood and (2) Penal Code section 654 did not prohibit multiple fines under section 12023 for each mislabeled package because the mislabeling of each individual package constituted a separate act or omission. We nevertheless reverse, concluding that Penal Code section 654 prohibited duplicative fines under sections 12023 and 12024 for mislabeling the same packages of seafood.

## LEGAL BACKGROUND

Division Five of the Business and Professions Code (§§ 12001 et seq.) regulates the use of weights and measures to "protect consumers from unfair dealings where the person who sells tangible goods weighs the goods and collects a charge based on the weight of the goods sold." (*Pitney-Bowes, Inc. v. State of California* (1980) 108 Cal.App.3d 307, 321 [166 Cal.Rptr. 489].) It does so in part by prohibiting sales by gross weight (§ 12023) or sales of less quantity than represented (§§ 12024, 12024.3).

The responsibility of enforcing the weights and measures legislation is entrusted to the Department of Food and Agriculture. (§§ 12002, 12003, 12012, 12027, 12100, 12107, 12107.1.) The persons actually charged with this duty within the department and within the related county agencies are referred to as "sealers." (§§ 12004, 12006, 12008, 12200 et seq.) Sealers are required, among other things, to periodically "weigh or measure packages, containers, or amounts of commodities sold, or in the process of delivery, in order to determine whether they contain the quantity or amount represented and whether they are being sold in accordance with law." (§ 12211.) Where violations are discovered, sealers are empowered to seek injunctions (§ 12012.1), institute criminal proceedings (§§ 12013, 12015), or impose civil penalties (§§ 12015.3, 12028).

---

[1] All further statutory references will be to the Business and Professions Code unless otherwise indicated.

STATEMENT OF FACTS

In October 2000, a Riverside County sealer inspected a 10-package lot of tilapia and a 9-package lot of seafood medley at a Food 4 Less store owned by Ralph's. The sealer's attention was drawn to the seafood medley because the label indicated zero weight for the tare, which is the packaging. Based on a sampling of two packages from each lot, the sealer determined that there was an average shortfall of .063 pounds per package of tilapia, for a total overcharge of $0.74 for the tilapia lot, and an average shortfall of .073 pounds per package of seafood medley, for a total overcharge of $1.82 for the seafood medley lot.

As a result of these discoveries, the sealer initially sought civil penalties for two violations: one short quantity violation (§§ 12024, 12024.3) for the irregularities in the tilapia lot and one gross weight violation (§ 12023) for the failure to exclude the tare from the packages of seafood medley. However, the sealer subsequently increased the alleged violations to four: two short quantity violations (§§ 12024, 12024.3), one for the tilapia lot and one for the seafood medley lot, and two gross weight violations (§ 12023), one for each of the packages of seafood medley that were sampled. The sealer admitted that the multiple gross weight violations (§ 12023) were unprecedented because such violations were normally charged as one per lot, rather than one per package. The sealer indicated that this change was prompted by discussions with other sealers from outside Riverside County.

After an administrative hearing, the county imposed civil penalties amounting to $1,000: $100 for each short quantity violation (§§ 12024, 12024.3) and $400 for each gross weight violation (§ 12023). Ralph's unsuccessfully pursued an administrative appeal, then sought administrative mandamus in the trial court. (§ 12015.3, subd. (c); Code Civ. Proc., § 1094.5.) The trial court denied the mandamus petition, leading to this appeal.

DISCUSSION

1. *Multiple Section 12023 Gross Weight Violations*

Ralph's raises an issue of statutory interpretation: whether section 12023 authorizes a separate fine for each gross weight package of a commodity or limits the fines to one for the entire offending lot.     ■     As a pure question of law, this issue is reviewed independently on appeal from a judgment denying mandamus relief. (*Hall v. Court Reporters Bd. of California* (2002) 98 Cal.App.4th 633, 637 [119 Cal.Rptr.2d 847].)

At the outset, both parties argue that the interpretation adopted by the administrative agency charged with enforcing the statute is entitled to deference. But which interpretation? The old one, limiting it to one fine for the

entire offending lot, or the new one, allowing a separate fine for each offending package? ■ An administrative construction of a statute is only entitled to as much deference as is warranted by "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." (*Hoechst Celanese Corp. v. Franchise Tax Bd.* (2001) 25 Cal.4th 508, 524 [106 Cal.Rptr.2d 548, 22 P.3d 324].) Applying that standard, we conclude that no deference is warranted. Neither interpretation can lay claim to consistency, obviously, and the record contains no information regarding the reasons for or thoroughness of either interpretation.

Considering section 12023 independently, we are reminded that "[o]ur role in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.] In determining intent, we look first to the words of the statute, giving the language its usual, ordinary meaning. If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain meaning of the statute governs. [Citation.] The words, however, must be read in context, considering the nature and purpose of the statutory scheme." (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1000 [90 Cal.Rptr.2d 236, 987 P.2d 705].)

Section 12023 states: "Except as provided elsewhere in this code any person who by himself or his employee or agent, or as the employee or agent of another, sells any commodity according to gross weight or measure is guilty of a misdemeanor." Both parties focus on the term "commodity," arguing that it means "lot of commodity" or "package of commodity" depending on their relative viewpoint. We believe that the parties focus on the wrong word. The term "commodity" contains no indication of quantity; it merely serves as a generic subject in order to make the statute applicable to a broad range of commercial goods. This is reflected in the various dictionary definitions, which define a commodity in general terms as an "economic good" or "article of commerce," without specifying an amount. (Webster's 3d New Internat. Dict. (1993) p. 458; Black's Law Dict. (7th ed. 1999) p. 267; *People v. K-Mart Corp.* (1989) 210 Cal.App.3d Supp. 1, 5 [259 Cal.Rptr. 59].)[2] This is also reflected in the remainder of the weights and measures legislation, where the term "commodity" is freely used in conjunction with various quantities. (E.g., § 12211 [instructing sealers to examine "packages, containers, or amounts of commodities"].) Thus, the term "commodity" says nothing whatsoever about quantity.

---

[2] Webster's actually includes a third definition of "commodity" as "a parcel or quantity of goods," lists "lot" as a synonym, and provides the following example: "I knew where a [commodity] of good names were to be bought." (Webster's 3d New Internat. Dict., *supra*, p. 458.) Although this definition conveys some sense of quantity, Webster's indicates that it is obsolete, meaning that "no evidence of standard use since 1755 has been found or is likely to be found." (*Id.*, at p. 16a.) This definition was not even included in Black's Law Dictionary.

We find it more helpful to focus on the word "sell." The statutes define "sell" as including "keep for sale, offer for sale, or expose for sale." (§ 12009.) Although in a sense Ralph's offered the entire lot of seafood medley for sale, each package was separately wrapped and priced for individual sale. Thus, it is more accurate to say that Ralph's offered each individual package for sale, making each gross weight package a separate violation of section 12023. And that interpretation is more consistent with the statutory purpose of protecting consumers, who would likely be purchasing the seafood by the package rather than the lot.

Nevertheless, Ralph's argues that section 12023 should be interpreted the same as the analogous section 12024, which appears to be applied on a lot-by-lot basis. Ralph's notes that section 12024 prohibits short quantity violations in language similar to section 12023: "Every person, who by himself or herself, or through or for another, sells any commodity in less quantity than he or she represents it to be is guilty of a misdemeanor, except as provided in Section 12024.3." And section 12024 is subject to section 12024.3, which provides: "(a) For commodities prepackaged and sold or offered for sale on the same premises, a violation of section 12024 is a misdemeanor ... if any of the following occurs: [¶] ... [¶] (3) The total monetary value of shortages, calculated on the basis of the average error of each individual lot ... *within all lots found to be in violation of Section 12024* at a single location, exceeds ten dollars ($10)." (Italics added.) As Ralph's contends, the italicized language indicates that the Legislature at least presumed that section 12024 violations were evaluated on a per lot basis. Ralph's argues that if that was what the Legislature intended for section 12024, it must have intended the same for the analogous section 12023.

Assuming for the sake of argument that sections 12024 and 12024.3 can be interpreted as Ralph's suggests,[3] the comparison with section 12023 is unpersuasive. Sections 12023 and 12024 were adopted simultaneously in 1939. In 1982, the Legislature subsequently adopted section 12024.3 and amended section 12024 to make section 12024 expressly subject to the new section 12024.3. However, the Legislature did not alter section 12023. If the Legislature thought that section 12023 was evaluated on a per lot basis like section 12024, then it could have, would have, and should have included section 12023 within the reach of section 12024.3 or another similar statute.

## 2. *Penal Code Section 654*

Ralph's also argues that multiple fines based on the same conduct were improper under Penal Code section 654, which provides: "An act or omission

---

[3] We do not express an opinion on this issue because we have not been called upon to interpret sections 12024 or 12024.3.

that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

Before addressing this argument, we must first address respondent's contention that Penal Code section 654 is inapplicable to these types of administrative fines, an assertion that is unsupported by authority. ■ We conclude that Penal Code section 654 applies to a section 12023 fine, even when imposed administratively. Penal Code section 654 is broadly written to apply to any form of punishment under any provision of law. A fine clearly constitutes "punishment" (see Pen. Code, § 15) and sections 12023 and 12024 are clearly "provisions of law." Although we can find no cases applying Penal Code section 654 in the administrative context, we see no relevant distinction between a criminal court and an administrative agency. Punishment is punishment regardless of who imposes it. Furthermore, our conclusion is not affected by the requirement in Penal Code section 654 that punishment be imposed under the provision that provides for the "longest potential term of imprisonment." Sections 12023 and 12024 are misdemeanors that include a potential term of imprisonment (Pen. Code, § 19), regardless of whether that potential is realized.

■ Turning to the substance of Ralph's arguments, Ralph's first contends that Penal Code section 654 prohibits the imposition of two section 12023 fines for the two gross weight packages of seafood medley because there was really only one act or omission; namely, failing to include the weight of the tare, or packaging, when preparing the labels. We disagree with that characterization. Section 12023 does not prohibit the preparation of inaccurate labels, it prohibits selling inaccurately labeled items. Thus, each inaccurately labeled package of seafood medley offered for sale constituted a separate and distinct violation.

■ Ralph's next contends that Penal Code section 654 prohibits the imposition of a fine under section 12024 for the entire lot of short quantity seafood medley and additional fines under section 12023 for the individual packages of gross weight seafood medley. This argument is well taken. The section 12024 fine and the section 12023 fines punished Ralph's for the exact same conduct in selling inaccurately weighed seafood medley. As a result, the section 12024 fine for the seafood medley must be stayed pursuant to Penal Code section 654.

## DISPOSITION

The judgment is reversed and the cause remanded with instructions to grant limited mandamus relief ordering respondent to stay the section 12024 fine for the seafood medley pursuant to Penal Code section 654. The parties shall bear their own costs on appeal.

Ward, J., and Gaut, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 29, 2003.